KELLY & McCADEN *v.* OWEN DWYER, Clerk.

1. CONSTITUTIONAL LAW. *Merchants' tax. Privilege.* Under the provisions of the Constitution of this State, the Legislature may classify merchants for purposes of taxation, and tax each class at discretion, except that it cannot impose a merchant's tax, usually denominated a license or privilege tax higher than the *ad valorem* tax on property on that portion of the merchant's capital used in the purchase of merchandise sold by him to non-residents and sent beyond the State, but may say that the business of a wholesale liquor dealer shall be deemed a privilege, not to be exercised without a license, and the payment of a special tax, in addition to the other taxes imposed upon such dealer as a merchant.

2. MERCHANTS' TAX. *Privilege.* If a merchant of one class, paying a tax as such, add to the occupation another though kindred business, which is additionally taxed, his license as a merchant will not exempt him from the payment of the additional tax.

3. SAME. *Merchant who sells liquors.* A general grocery merchant, who keeps spirituous liquors as a part of his stock which he sells at wholesale, is liable to pay, under the revenue act of 1881, the privilege tax in gross imposed on wholesale liquor dealers, in addition to the tax on other merchants.

4. SAME. *License. Not a contract.* A merchant's license under our system is not a contract, and the State may change the rate of taxation pending the period for which it is issued, and the merchant must pay taxes according to the rate fixed by law for any given time.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

WRIGHT & FOLKES, GANTT & PATTERSON and LOAGUE & LOAGUE for complainants.

ATTORNEY-GENERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

The doubt as to the special privilege tax of $150 on wholesale liquor dealers, seems to me to grow out of some confusion in regard to the use of the terms "merchants" and "privileges." The general provisions of the Constitution are, "that all property shall be taxed according to its value, * * so that taxes shall be equal and uniform. No one species of property * * * shall be taxed higher than any other species of the same value." But to these general provisions there is this exception: "The Legislature shall have power to tax merchants, peddlers and privileges in such manner as they may from time to time direct." This exception is again qualified by this further provision: "The portion of a merchant's capital used in the purchase of merchandise sold by him to non-residents and sent beyond the State, shall not be taxed at a rate higher than the *ad valorem* tax on property."

Now if the tax of $150 in question, is a tax upon the capital of the merchant, then to the extent his capital is used in the purchase of merchandise sold to non-residents and sent beyond the State, it violates the last clause of the Constitution above cited.

Merchants are taxed an *ad valorem* tax on the value of their merchandise as other persons; in addition, they are required to pay a further tax, estimated by the amount of their capital or the value of their goods, and in this instance precisely equal to the *ad valorem* tax. This, it is conceded, is authorized by the Constitution, but is subject to the above provision

of the Constitution in regard to that portion of the merchant's capital used in purchasing goods sold to non-residents. This tax has, in many acts of the Legislature and in the opinions of judges, been called a "privilege tax," or a license tax, and from this inaccurate use of terms, as I think, the doubt arises. It is not a "privilege tax," it is a "merchant's tax." The language of the Constitution is, that the Legislature shall have the power to tax "merchants, peddlers and privileges," in such manner as they may direct, and, as said by Judge Nicholson in *Jenkins* v. *Ewing, clerk*, 8 Heis., 473, "upon well-settled principles of construing constitutional or statutory provisions, the enumeration of "merchants" and "peddlers" as distinct objects of taxation, would generally be taken as excluding the intention of embracing them under the term "privileges," which is also designated as a distinct subject of taxation. The power to tax "merchants" and "peddlers" is as distinctly recognized by these terms as objects of taxation as is the term "privileges," and the fact that the framers of the Constitution specified "merchants" and "peddlers" as distinct objects, would seem to indicate that they did not use the word "privileges" as including in its definition either "merchants" or "peddlers," but they intended that they might be taxed as "merchants" and "peddlers," and not as "privileges."

The tax therefore, above referred to, upon the capital of the merchant or the value of his goods equal to the *ad valorem* tax, and in addition thereto, is not a privilege tax, but is a "merchant's tax," levied under

Kelly *v.* Dwyer.

the clause of the Constitution giving to the Legislature the power to tax "merchants" in such manner as they may direct, and under which it may be levied upon merchants in addition to the *ad valorem* tax, and without declaring the occupation of a merchant a "privilege" and taxing it as such, but it being a tax on the capital, it is subject to that clause of the Constitution in regard to the portion of the merchant's capital used in the purchase of goods sold to non-residents and sent out of the State.

Now the question is, can the Legislature, after taxing a wholesale liquor dealer an *ad valorem* tax and also a "merchant's tax," as above defined, also declare his occupation a "privilege," and require him to pay a special "privilege tax" for the privilege of following the occupation, without regard to the amount of his capital, and without regard to whether he sells to residents or non-residents?

In the view of the framers of the Constitution, a "merchant's tax," in addition to the *ad valorem* tax, to the extent his capital was used in selling goods to residents of the State, is not an unjust or double tax, for the reason that the merchant simply adds the additional tax to the price of his goods and the burden is borne by the people at last, the merchant simply becoming a "tax gatherer." This tax might be imposed without requiring the merchant to take out a license, though this is usually done, and it is usually denominated either a "privilege" or "license tax." But merchandising in general is not declared a privilege.

A wholesale liquor dealer may be taxed as a mer-

chant, for he is in fact a merchant, his occupation falling within the definition of the term. But the Legislature have seen proper to say that the business of a wholesale liquor dealer shall be deemed a privilege, and shall not be exercised without a license and the payment of a special privilege tax. There is nothing to prevent this discrimination against this class of merchants. The business might be prohibited altogether, or subjected to such burdens upon the exercise of the privilege as the Legislature may deem advisable. That he buys and sells goods for profit and therefore is a merchant, is no reason why the Legislature may not declare the dealing in this particular class of merchandise a privilege not to be followed at all without the payment of this special privilege tax. In this view, the tax is not a tax upon the capital of the merchant, and is not subject to the clause of the Constitution in question.

COOPER, J., delivered the following opinion:

This is an agreed case to test the validity of the revenue and assessment acts of 1881 in the case of a certain class of merchants. The circuit judge rendered judgment in favor of the defendant, and the plaintiffs appealed.

The plaintiffs have been for about three years engaged in business as grocery merchants in the Taxing District of Shelby county. Their business consists in selling general merchandise as grocers, the stock being composed of sugars, coffees, teas, flour, meal, bacon,

lard, coal oil, whisky and other spirituous liquors, and other articles usually kept in such stores. On November 26, 1880, they paid up their State and county tax for the year ending on November 1, 1880, and, having executed the proper bonds, they received from the clerk of the county court a license, "subject to the laws of the State," to exercise the privilege of merchants for one year from November 1, 1880 to November 1, 1881. One of the bonds executed by them was in the penalty of $1,000, conditioned for their appearance, at the expiration of the license, before the clerk of the county court, and that they would then and there state on oath the amount of capital stock invested in such business during the past twelve months, taxable under the provisions of the laws of the State since the issuance of their State and county license, and pay the amount of the State and county tax due thereon "as prescribed by law." The other bond was in the penalty of $500, conditioned to pay all costs arising from prosecutions for mixing and adulterating the liquors offered for sale under the license. It is agreed that plaintiffs are wholesale dealers in spirituous liquors. It is further agreed that one-half of the liquors, and one-half of the other merchandise bought, kept in stock and sold by them, are sold to non-residents of this State, and sent beyond the limits of the State.

Under the circumstances, the defendant Dwyer, as clerk of the county court, by virtue of the act of the Legislature of April 7, 1881, on May 23, 1881, required the plaintiffs to pay an *ad valorem* tax on their

stock of merchandise of thirty cents on each hundred dollars, and a privilege tax of thirty cents on each hundred dollars, and a privilege tax of ten cents on each hundred dollars for school purposes; and also the further sum of $150 for the State and $50 for the county, the privilege tax as wholesale liquor dealers, the first of these. sums being fixed as the State tax by the 4th section of the act of 1881, and the last by the county court for the county tax on that business.    The plaintiffs, upon the issuance of a distress warrant, paid these privilege taxes of $150 and $50 under protest, and claim now to recover the amount.

By the first section of the revenue act of April 7, 1881, it is provided: "That the State tax on every one hundred dollars' worth of taxable property shall be forty cents for the year 1881, and for every subsequent year thereafter, thirty cents of which shall be for State purposes and ten cents for school purposes." By the second section, the county courts of the State are authorized to levy an annual county tax on every one hundred dollars' worth of taxable property for general county purposes, not to exceed the State tax, exclusive of the tax for public roads and schools. Section three is: "That merchants shall pay an *ad valorem* tax upon the capital invested by them of thirty cents on each one hundred dollars, a privilege tax of thirty cents on each one hundred dollars, provided that such privilege tax shall not in any case be less than ten dollars, and they shall pay a privilege tax of ten cents on each one hundred dollars of their capital invested, for school purposes." Section four is: "That

Kelly *v.* Dwyer.

the rate of taxation on the following privileges shall be as follows, per annum, except where a shorter term is herein prescribed, viz." A number of occupations are then named with the privilege tax affixed, and among others, " wholesale liquor dealers, one hundred and fifty dollars, and taxed as other merchants."

It is obvious, and is not denied, that the taxes demanded by the defendant` as clerk were authorized by the act. And the only question really before us by the agreed case is whether the clerk had the right to demand and collect the gross sums laid as a tax on the occupation of the plaintiffs as wholesale liquor dealers pending the existing license, or at all. Some other questions are mooted, which will be noticed presently.

It is urged that these taxes in gross are illegal because they would constitute double taxation on the business of the plaintiffs, and because the Legislature cannot, under the provisions of the State Constitution, discriminate between classes of merchants in taxation.

The ground of the first of these objections is that the plaintiffs as merchants are already, under the third section of the act, assessed with a privilege tax on their capital invested, their business including the buying and selling of liquors with other merchandise, and the privilege taxes of the 4th section on them as wholesale liquor dealers would constitute a double taxation. We have held that the presumption is against a legislative intent to lay double taxes on the same property or the same business, and therefore where the business of carrying on a livery stable was declared

a privilege subject to a license tax, it was held that the keeper of a livery stable for the year could not also be required to pay a license tax on each buggy used in his business, in the absence of an express legislative declaration of a contrary intent: *Bell* v. *Watson*, 3 Lea, 328. But the court, in order to prevent misconstruction, took care to add that the rule only applied in a case where the business, the privilege tax on which would be a double charge, was an essential part of the occupation for the exercise of which a license had been taken out. The rule does not apply where the one business, although useful, convenient or profitable for conducting the other, is not an essential part of it. It may be convenient in a general grocery store to be able to keep as a part of the stock for sale an assortment of spirituous liquors, but it is not shown by the agreed facts in this case to be an essential part of the business. And even if it had been shown, the intention of the Legislature to lay the additional taxation upon the occupation of a wholesale liquor dealer, whether separate or in connection with other business, is express and beyond question. Wholesale liquor dealers are to be taxed as other merchants, and also to pay in addition a fixed sum as a privilege tax. This class of dealers is commonly selected for exceptional taxation, and the right to levy such taxes, Mr. Cooley suggests, has almost ceased to be contested: Cooley on Tax., 390. By our State Constitution, art. 2, sec. 28, the Legislature is clothed with power "to tax merchants, peddlers and privileges in such manner as they may from time to

time direct." Under this provision, it has always been held that the taxation was left entirely to the discretion of the Legislature: *Adams* v. *M. & A. of Somerville*, 2 Head, 365. And it has passed into judgment that the vocation of a wholesale grocer might be made one which could only be exercised by a license from some constituted authority: *French* v. *Baker*, 4 Sneed, 193. Unless there is something else in the case, the decision of the circuit judge on this point was correct.

An ingenious and able argument has been made in support of the proposition that the Legislature cannot discriminate between merchants, but must subject them to the same burdens. It is not denied that other vocations may be declared privileges, and taxed separately at the pleasure of the Legislature. It is not denied also that our decisions have held, in conformity with the uniform practice of the Legislature since the Constitution of 1834, in which the clause above quoted likewise occurs, that the trade of a merchant might be declared a privilege, and taxed accordingly. The argument is that the discretionary power of the Legislature is to tax "merchants, peddlers and privileges," which language would fairly imply that the occupations of merchants and peddlers were not embraced in the word "privilege." But this very point was made and considered in *French* v. *Baker*, 4 Sneed, 193, and the conclusion held not necessarily to follow. Besides, as Nicholson, Ch. J., has well said, it is utterly immaterial whether the occupation of a merchant be treated as a privilege or not. Precisely the same power exist

in the Legislature over merchants as over privileges, and it would be a contest about words to discuss the propriety of calling the occupation of merchants a privilege. The Legislature may tax the occupation of a merchant as it may a privilege, and calling it a privilege cannot in the least affect the right. It would be a mere form of saying that the occupation should be licensed. "The power of the Legislature to tax merchants, peddlers and privileges, is unlimited and unrestricted, and may be exercised in any manner or mode in their discretion": *Jenkins* v. *Ewin,* 8 Heis., 456, 474, 479. Privileges may be classified and taxed accordingly, and we see no reason why merchants, whose occupations are diverse, may not also be taxed by classes. If a merchant of one class, paying a tax as such, add to the occupation another though kindred business, the buying and selling of distinct articles of merchandise, which is separately taxed, his license for the one will not exempt him from paying the tax for the other. The power of the Legislature is as unlimited in the classification as in the taxation.

The counsel for the plaintiffs seem to think that the act of 1881 is the first revenue bill in which a discrimination is made, by a privilege tax in gross, against liquor dealers in addition to the other taxes on merchants. But this is a mistake. The act of 1869, ch. 45, sec. 5 (Code, sec. 691*d*), makes the same discrimination, and the act of 1873, ch. 118—the act under which plaintiffs claim to be licensed—makes liquor dealers a separate class from merchants for purposes of license.

The plaintiffs, as wholesale liquor dealers, are liable under the 4th section of the revenue act of 1881 to the gross tax imposed by it on their occupation, in addition to the merchants' tax imposed by the 3d section. But the agreed case shows that one-half of their stock in trade, including the spirituous liquors, is sold to non-residents of the State and carried out of the State. The Constitution, art. 2, sec. 28, provides: " The portion of a merchant's capital used in the purchase of merchandise sold by him to non-residents and sent beyond the State, shall not be taxed at a rate higher than the *ad valorem* tax on property." This provision immediately follows the clause of the Constitution which confers on the Legislature the discretionary power to tax merchants, peddlers and privileges. Its meaning has been and is the subject of grave doubt, and upon which the judges of the court differ. I am of opinion that the intention was to limit the discretionary power of the Legislature over so much of the capital of the merchant as might be used in buying and selling goods to non-residents for shipment beyond the State, and which is actually shipped. The reason for this discrimination in favor of our wholesale merchants is given by the learned judge who delivers the opinion of the court in *Friedman* v. *Mathes*, 8 Heis., 488. It was there held that the clause of the Constitution above cited was self-executing, and that it protected the capital used in the mode designated from any taxation beyond the *ad valorem* tax on property. It was further held, in the absence of any legislation as to the mode of protecting this part of the capital, that

it was the duty of the tax collector to ascertain the proportion of capital so used, and make the deduction. In that case, the merchant was made liable to pay a license tax equal to the *ad valorem* tax, and it was agreed that twenty-nine per cent. of his capital was used in the purchase and sale of goods to persons in this State, and seventy-nine per cent. in the purchase and sale of goods to non-residents. The merchant paid · the full *ad valorem* tax on the entire stock, and twenty-nine per cent. of the privilege tax, and refused to pay the residue of the privilege tax. This court decided that he was only liable to the extent of the payment made. The Code, sec. 703, does provide for a similar proportioning of taxes in certain cases. The decision is conclusive in this case if adhered to. For, the effect of the act of 1881 is to charge the plaintiffs with the privilege tax equal to their *ad valorem* tax, and with the tax in gross in addition, which is also a privilege tax. The one tax is fixed by the amount of capital, while the other is arbitrary; but they are substantially the same in character. There is no more difficulty in proportioning the latter than the former. In each case, under that decision, the plaintiffs are chargeable with only one-half of the privilege tax. And ordinarily the limitation of the Constitution would be nugatory upon any other construction. If the Legislature can, merely by arbitrarily fixing the privilege tax, charge the plaintiffs on their whole capital, they will have taxed the capital used in selling to non-residents "at a rate higher than the *ad valorem* tax on property," which the Constitution expressly prohibits.

A majority of the court have, however, arrived at a different conclusion. They think that the plaintiffs in error are chargeable with the full amount of the privilege tax in gross. The opinion of the majority of the court on this point is delivered by Judge McFarland.

It is insisted by the plaintiffs that they are protected by their license from the payment of any of these taxes until the expiration of their license on the 1st of November, 1881. But the license, as we have seen, is only to exercise the privilege of merchants for one year, "subject to the laws of the State," and the bond executed by the merchant is to pay the amount of State and county tax "as prescribed by law." Neither the license nor the bond limits the taxes which the merchant shall pay, to the taxes as they stood at the date of the bond. No part of the taxes for the year 1881 was then paid. The license was only a license, not a contract by the payment of a consideration. There was no estoppel on either party. The plaintiffs might have ceased to do business before the 1st of January, 1881, and the State had plenary power to change its rate of taxation at any time. The agreed facts only show that the defendant demanded the taxes as fixed by the 3d section of the revenue act, not that he collected them. He has only collected the tax in gross, which, in the opinion of the majority of the court, he had the right to do. If the clerk were to take a new bond, it would be precisely of the same tenor and effect of the old bond, and would only extend the period for the collection of the

13—VOL. 7.

taxes to the end of twelve months from its date. We are inclined to think, although the point is not really before us, that the old license and bond may well be permitted to stand, the plaintiffs being liable for the taxes of the year under the act of 1881.

The judgment will be affirmed with costs.

FREEMAN, J., said:

I hold, that under art. 2, sec. 28, of the Constitution of 1870, the clause, "But the Legislature shall have power to tax merchants, peddlers and privileges in such manner as they may from time to time direct," the Legislature may tax the merchant, as provided in a previous part of the section, on all his stock as property, *ad valorem*—this tax to be uniform throughout the State. They may then tax him as a merchant, that is, for following the occupation of a merchant, or rather as a merchant, and they may tax him as such to the extent, and regulated by the amount of merchandising he engages in, therefore this tax may be on the amount of his capital, or the amount of his sales, or in any manner the Legislature may direct; but having thus taxed him on his stock as property, and then for merchandising, or as a merchant, he cannot then be taxed again for the *privilege* of being a merchant. In other words, the Constitution has affirmatively classified the objects of taxation under this clause, and this affirmative provision forbids it being done any how else, or on any other principle. This language excludes the idea that a merchant and mer-

Kelly *v.* Dwyer.

chandising as an object of taxation, is also a privilege, or that privileges was intended also to apply to merchants as such; if so, why have two objects of taxation, of the same thing, by different names? This seems to me to be unreasonable, and not a fair interpretation of the language. The convention is thus held to say, we tax a merchant *ad valorem* on his property used in merchandising, we tax you as a merchant, and then under the head of privileges, we tax you for the *privilege* of being a merchant—of being what we have already authorized you to be taxed for being. I think the theory that sustains this construction of the Constitution is essentially vicious, and so far as the case in 8 Heis., 473, sustains it, that case should be overruled. For these reasons, I am unable to concur in either view expressed by the other members of the court.

The clause, "in such manner as they may from time to time direct," does not, in my judgment, add anything to the power, or increase or affect the object of taxation, but only gives the Legislature discretion as to the mode in which the tax should be levied or assessed upon the objects previously defined.

Such being my view of the meaning of the Constitution, I am compelled to differ from both views, as given in the other opinions delivered, and need not express any opinion as to which conclusion is correct, as to the right of the wholesale merchant to have a deduction for such goods as are sold out of the State.